**UNITED STATES of America, Appellee,**

v.

**Jerome WHITE HORSE, Sr.; Carl Makes Him First and Eagle Hunter, a/k/a Vetal Chasing Hawk, Appellants.**

No. 86–5136.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 8, 1986.

Decided Dec. 30, 1986.

Robert C. Riter, Jr., Pierre, S.D., for White Horse.

Robert H. Anderson, Pierre, S.D., for Eagle Hunter.

Darla Pollman Rogers, Onida, S.D., for Carl Makes Him First.

Robert A. Mandel, Asst. U.S. Atty., Pierre, S.D., for U.S.

Before ARNOLD, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Jerome White Horse, Sr., Carl Makes Him First, and Eagle Hunter appeal their convictions for knowingly converting the funds of an Indian tribal organization in violation of 18 U.S.C. § 1163 (1982). Appellants' principal argument is that the trial court erred in instructing the jury as a matter of law that the Cheyenne River Sioux Tribe Telephone Authority, of which appellants were directors, is an Indian tribal organization as defined in 18 U.S.C. § 1163. We conclude that the trial court committed reversible error by failing to submit for the jury's determination the question of whether the Telephone Authority is an Indian tribal organization under section 1163.

Appellants were members of the board of directors of the Telephone Authority, an entity chartered and wholly-owned by the Cheyenne River Sioux Tribe. The government contended that on several occasions each appellant received a substantial travel advance for the purpose of attending a certain convention on behalf of the Telephone Authority. In each case, no convention was attended, and the travel advance—ranging from $556 to $1650 per trip—was converted for personal use. In sum, appellants converted over $20,000 in travel advances.

Appellants were indicted by a South Dakota grand jury. The indictment consisted of numerous counts, all charging conversion of funds of an Indian tribal organization in violation of 18 U.S.C. § 1163.[1] Af-

---

1. 18 U.S.C. § 1163 (1982) provides:

Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization; or

Whoever, knowing any such moneys, funds, credits, goods, assets, or other property to have been so embezzled, stolen, converted, misapplied or permitted to be misapplied, receives, conceals, or retains the same with intent to convert it to his use or the use of another—

Shall be fined not more than $5,000, or imprisoned not more than five years, or both; but if the value of such property does not

ter a three-day jury trial, each appellant was convicted on all counts charged against him at trial, and each received a prison sentence ranging from two and one-half to three and one-half years. The court also sentenced each appellant to four years probation to commence upon release from prison, with a duty to make restitution to the Telephone Authority as a condition of probation.

In order to convict appellants, the government was required to prove beyond a reasonable doubt that the Telephone Authority was an Indian tribal organization under 18 U.S.C. § 1163. Contending that the Telephone Authority was not an Indian tribal organization, appellants moved for a judgment of acquittal prior to trial, at the close of the government's case, and after the presentation of all the evidence. These motions were denied. In denying appellants' motion after the close of the government's case, the trial judge stated: "I'm convinced that the Tribe has amply sufficient control and ownership to constitute the [Telephone Authority] a Tribal entity and moreover I can't see any real dispute about the facts which have to be considered. I think it's a matter of law." Trial Transcript at 237–38. The court later entered its denial of appellants' motions for judgment of acquittal in writing, stating that its denial was based on *United States v. Logan*, 641 F.2d 860 (10th Cir.1981), *United States v. Crossland*, 642 F.2d 1113 (10th Cir.1981), and *United States v. Brame*, 657 F.2d 1090 (9th Cir.1981).

Appellants' primary argument is that the trial judge erred by failing to instruct the jury on the law applicable to the question of whether the Telephone Authority constituted an Indian tribal organization and then refusing to allow the jury to determine from the evidence whether the Telephone Authority met the definition. The trial judge did instruct the jury that in order to reach a guilty verdict it must

conclude that the government proved beyond a reasonable doubt that "the moneys, funds or assets described in the indictment belonged to an Indian Tribal organization." The judge further instructed the jury, however, that "the Cheyenne River Sioux Tribe Telephone Authority is an Indian Tribal organization as that term is used in these instructions." Consequently, the trial judge, not the jury, decided that the government had proved beyond a reasonable doubt that the Telephone Authority constituted an Indian tribal organization as defined in 18 U.S.C. § 1163.

The evidence at trial indicated that the Telephone Authority has a relevant history extending to 1959. About that year, the Cheyenne River Sioux Tribe purchased three telephone exchanges that served the towns of Eagle Butte, Dupree, and Isabel, South Dakota. When the Tribe entered the telephone business, it sought funding and technical advice from the United States Rural Electrification Administration (REA). The Tribe learned, however, that the REA Act, as it existed then, prohibited loans to the Tribe, a public entity. This changed in 1973; the REA was now permitted to loan funds to public entities. The Tribe took steps to secure REA funding, but soon learned of a complication: REA notes run thirty-five years, but the Tribe was only allowed to mortgage Indian reservation land for twenty-five years. To avert this problem, the Tribe chartered, pursuant to its tribal authority, the Telephone Authority, a corporation wholly-owned by the Tribe. The REA then made loans to the Telephone Authority. The chartering document provides that the directors of the Telephone Authority are appointed and removed for cause by the Tribe, and that all net earnings for each year shall be transferred to the Tribe. The testimony at trial indicated, generally, that while the Telephone Authority is controlled by the Tribe,

exceed the sum of $100, he shall be fined not more than $1,000, or imprisoned not more than one year, or both.

As used in this section, the term "Indian tribal organization" means any tribe, band, or community of Indians which is subject to the laws of the United States relating to Indian affairs or any corporation, association, or group which is organized under any of such laws.

the Telephone Authority's day-to-day activities are distinct from the Tribe.

■ We now consider whether the trial court erred in determining as a matter of law, and thus refusing to submit to the jury, the question of whether the Telephone Authority was an Indian tribal organization under 18 U.S.C. § 1163. Because this determination concerned an element essential to conviction and required the trial judge to assess the probative value of evidence introduced at trial, we hold that the issue should have been submitted to the jury.

## I.

■ The constitutional right to a jury trial for serious criminal offenses is both a fundamental individual right and a right "fundamental to the American scheme of justice." *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968). A necessary aspect of the right to a jury trial is that every fact essential to the conviction of an individual must be proved beyond the jury's reasonable doubt. *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (quoting *Davis v. United States,* 160 U.S. 469, 484, 493, 16 S.Ct. 353, 360, 40 L.Ed. 499 (1895)). A judge commits error when he instructs the jury as a matter of law that a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding. *United States v. Voss,* 787 F.2d 393, 398 (8th Cir.1986) (citing *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). It makes no difference that the evidence supporting proof of that element is "overwhelming," *id.* 787 F.2d at 399, for it is the jury's role, not the judge's, to find the facts essential to a criminal conviction. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977).

Accordingly, we must decide whether the determination that the Telephone Authority is an Indian tribal organization under 18 U.S.C. § 1163 is a fact essential to conviction such that a conviction could stand only if the jury concluded that this fact was proved beyond a reasonable doubt. The parties agree that the government was required to prove that the Telephone Authority was an Indian tribal organization under section 1163. The government contends, however, that the question of whether the Telephone Authority constituted an Indian tribal organization was not a question of fact for the jury. Rather, it was a question of law properly decided by the judge. Such a conclusion, the government urges, is dictated by *United States v. Briddle,* 443 F.2d 443 (8th Cir.), *cert. denied,* 404 U.S. 942, 92 S.Ct. 291, 30 L.Ed.2d 256 (1971), *United States v. Morris,* 451 F.2d 969 (8th Cir. 1971), and *United States v. Guy,* 456 F.2d 1157 (8th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 136, 34 L.Ed.2d 153 (1972).

This court recently examined the necessity of jury instructions as they relate to the essential elements of a crime in *United States v. Voss,* 787 F.2d at 393. We held in *Voss* that jury instructions which did not require the jury to necessarily find that certain property was "used in interstate commerce"—an essential element for conviction—mandated reversal on the basis that the jury did not find that every fact essential to conviction was proved beyond a reasonable doubt. *Id.* at 400. Although there was "overwhelming evidence" that the interstate commerce element had been proved, error was committed because the jury, not the judge, must decide that every fact essential to conviction was established. *Id.* at 398–99.

We concluded in *Voss* that the interstate commerce element was a fact essential to conviction, solely within the jury's province, but we did not address how courts should determine whether the jury or the judge should decide an issue relating to an essential element of a crime. The government points to several occasions prior to *Voss* where this court has held that an issue relating to an essential element of a crime was properly decided by the judge because that issue consisted solely of a question of law. *See Guy,* 456 F.2d at 1163; *Morris,* 451 F.2d at 972–73; *Briddle,*

443 F.2d at 447–48. These decisions provide limited guidance today. Each is based on distinguishable, facts, and each provides scant reasoning for the conclusion that an issue relating to an essential element of a crime was a question of law, properly decided by the judge. Still, we recognize that this panel is without authority to overrule or refuse to follow these cases. However, to the extent these cases may be inconsistent with our holding today we believe intervening Supreme Court authority creates a climate that substantially limits their impact and further justifies the result reached here.

The difficulty in relying on the purported distinction between questions of law and questions of fact to decide whether a judge or jury should determine whether an essential element of a crime has been proved was considered by the Fifth Circuit Court of Appeals in *United States v. Johnson,* 718 F.2d 1317 (5th Cir.1983) (en banc). The court considered whether the trial court could conclude as a matter of law—thus depriving the jury from deciding an essential element for conviction—that a particular document was a "security." The court first rejected the government's argument that the propriety of the trial court's action rests on a distinction between questions of law and questions of fact, "for in every case application of a legal principle turns on the presence of particular facts." *Id.* at 1321. The issue rests not on a distinction between questions of law and questions of fact, but rather "[t]he issue is the role of the jury in the trial guaranteed to the accused." *Id.* In concluding that the judge's province is limited to instructing the jury on the law, the court stated:

> Thus the jury may not be relegated to deciding only questions that the judge thinks to be "factual". Federal judges instruct the jury on the law applicable to the issues raised at trial. Fed.R.Crim.P. 30 permits any party to ask that the court "instruct the jury on the law as set forth in [written] requests." But the

judge's role is simply to instruct the jury "on the law."

*Id.* at 1322.

We agree that the trial judge's role, as it relates to determining whether the elements essential to a criminal conviction have been established, is extremely limited; he instructs the jury on the law applicable to the issues raised at trial. The next two steps are for the jury. The jury first *determines* the facts, then it *applies* the law to those facts. *United States v. Gleason,* 726 F.2d 385, 388 (8th Cir.1984). *See generally* 2 C. Wright, *Federal Practice & Procedure* § 485, at 711 (1982) ("The purpose of a charge is to inform the jury of its function, which is the independent determination of the facts, and the application of the law, as given by the court, to the facts found by the jury."). Thus, when the judge is no longer deciding the law that applies to the evidence, but rather is applying the law to the facts—facts that are determined after assessing the probative value of evidence introduced at trial—the judge has invaded the jury's province.

The trial judge invaded the jury's domain by declaring in his instructions to the jury that, as a matter of law, the Telephone Authority constituted an Indian tribal organization under 18 U.S.C. § 1163. The judge based his determination on section 1163's definition of Indian tribal organization as interpreted in *United States v. Logan,* 641 F.2d at 860, *United States v. Crossland,* 642 F.2d at 1113, and *United States v. Brame,* 657 F.2d at 1090. These cases support the conclusion that the Telephone Authority constituted an Indian tribal organization if there was a sufficient nexus between the Tribe and the Telephone Authority. The only way the judge could have determined this nexus existed is by weighing certain evidence introduced at trial. This evidence was introduced primarily in the form of witness testimony. The judge was thus forced to evaluate the probative value of this evidence, even if it was undisputed, to reach his conclusion. He did just that when he stated that because there was not "any real dispute about the facts

which have to be considered," the Telephone Authority constituted an Indian tribal organization as a matter of law. Trial Transcript at 238. By weighing the merits of evidence introduced through testimony, the judge invaded the jury's province and deprived the jury of deciding whether facts essential to appellants' convictions were established beyond a reasonable doubt.[2] *Cf. United States v. Reeves,* 730 F.2d 1189, 1195 (8th Cir.1984) (evaluation of credibility and demeanor of witnesses is peculiarly within the factfinder's province); *United States v. Waterman,* 704 F.2d 1014, 1017 (8th Cir.1983) (determining witness' credibility is primarily the function of the jury); *United States v. Scott,* 668 F.2d 384, 388 (8th Cir.1981) (well settled that the credibility of witnesses is exclusively for the jury).

While our holding is strongly supported by Judge Rubin's opinion in *Johnson, supra,* we must recognize that he treats this court's decisions in *Briddle, Morris,* and *Guy* as contrary to the *Johnson* court's position. *Johnson,* 718 F.2d at 1322–23 n. 17. To the extent these three decisions collide with *Johnson,* we feel they are distinguishable from the present situation. These three cases demonstrate that in some situations a trial court judge may declare in his instructions to the jury that an element essential to conviction has been established as a matter of law. Even in these situations the judge is forced to apply the law to facts, "for in every case application of a legal principle turns on the presence of particular facts." *Johnson,* 718 F.2d at 1321. There is a crucial difference, however, between facts essential to conviction that must be determined by a jury and facts applied by a judge to declare that an essential element has been established as a matter of law. The existence of these latter facts is not premised on an evaluation of the credibility of any evidence, and the probative value of these facts cannot prop-

erly be altered by the jury's analysis. *Cf. Johnson,* 718 F.2d at 1321–22 n. 13.

Thus, while it is the jury's role to both determine the facts and apply the law to these facts, both roles are obviated if the existence of facts is not premised on an evaluation of the probative weight of evidence. *See Sinclair v. United States,* 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929) ("The question of pertinency * * was rightly decided by the court as one of law. It did not depend on the probative value of evidence."); *cf. United States v. Snider,* 720 F.2d 985, 992 (8th Cir.1983) (jury's duty is to judge the credibility of witnesses), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984); *United States v. Scholle,* 553 F.2d 1109, 1119 (8th Cir.) (jury's duty is to judge credibility of evidence and accord it proper weight during deliberation), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *United States v. Cluck,* 542 F.2d 728, 732 (8th Cir.) (jury's duty is to pass upon credibility of witnesses and determine weight to be given their testimony), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 597 (1976). Such was the case in *Guy,* where the trial court did not err in rejecting as a matter of law the contention that Federal Reserve notes are not "obligations of the United States." *Guy,* 456 F.2d at 1163. The contention was premised on two legal assertions. First, the appellant argued that the Federal Reserve system is unconstitutional, an issue the Eighth Circuit had already "passed upon adversely to the appellant several times." *Id.* Second, the appellant argued that Federal Reserve notes were not issued for valid consideration. The trial court properly decided this was not an issue for the jury's determination since, regardless of the evidence presented at trial, the appellant's "position could not be sustained as a matter of law." *Id.* Similarly, the issue in *Morris* of whether the appellant was in "federal cus-

---

**2.** We do not quarrel with the substance of the judge's finding. He was probably correct; the Telephone Authority probably did constitute an Indian tribal organization under section 1163. But just as this determination was outside the

trial judge's domain, it is outside ours. *Voss,* 787 F.2d at 398. We reject appellants' contention that the trial court erred in refusing to grant a judgment of acquittal on these grounds.

tody" involved a legal question of status that could only have been created by legal process, and the court's conclusion was bottomed on facts whose probative value could not properly have been altered by a jury. *Morris,* 451 F.2d at 972–73. Finally, in *Briddle* the trial court was required to construe a lease in order to instruct the jury that a building was "property of the United States." *Briddle,* 443 F.2d at 447. The *Briddle* court explained that its conclusion "follows from a legal construction of the lease and did not remove any essential element of the offense from the jury." *Id.* In contrast, the issue of whether the Telephone Authority was an Indian tribal organization required an assessment of the probative value of the ordinance establishing the Telephone Authority, the testimony regarding the managerial control the Tribe exerted over the Telephone Authority, the testimony concerning their financial relationship, and various other evidence that might have tended to prove that a sufficient nexus existed between the Tribe and the Telephone Authority. To the extent *Guy, Briddle,* and *Morris* may conflict with our decision today, we are satisfied that recent Supreme Court admonitions cast a sufficient cloud over them that they should not be controlling. *See, e.g., Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 3106, 3107, 92 L.Ed.2d 460 n. 8 (1986); *Sandstrom v. Montana,* 442 U.S. at 510, 99 S.Ct. at 2452. In any event, *Guy, Briddle,* and *Morris* do not authorize a judge to deprive a jury of finding those facts essential to conviction that must be determined by weighing the evidence introduced at trial. In the present case, the judge's instructions to the jury deprived the jury of the ability to determine whether the facts essential to appellants' convictions were established by the evidence beyond a reasonable doubt. This was harmful error. *Rose v. Clark,* 106 S.Ct. at 3106. Appellants were deprived of their full constitutional right to a jury trial, and their convictions must accordingly be reversed.

## II.

To facilitate the resolution of evidentiary disputes in any future proceedings against appellants, we address their contention that the trial court erred in refusing to admit certain evidence offered to prove that appellants' actions did not satisfy the intent requirement of 18 U.S.C. § 1163. The trial court first refused to admit the out-of-court statements of Robert Pearman, the former manager of the Telephone Authority, relating to appellants' intent to repay the travel advances to the Telephone Authority. The trial court also refused to allow the introduction of written agreements between appellants and the Telephone Authority in which they agreed to repay the total amount of the travel advances in monthly installments.

■ The trial court correctly concluded that Pearman's statements constituted inadmissible hearsay. The statements were hearsay in that they were offered to prove what they asserted—that appellants had made arrangements to repay the travel advances. Fed.R.Evid. 801(c). Despite the fact that Pearman was an unavailable witness by virtue of his fifth amendment refusal to testify, the hearsay statements did not fall under any of the exceptions to the rule against hearsay. *Id.* 803, 804.

■ Similarly, the trial court did not abuse its discretion in refusing to admit the written agreements indicating appellants' intent to pay back the travel advances. The agreements were entered after appellants had been interviewed by F.B.I. agents concerning the activities for which they were subsequently indicted and convicted. The agreements were entered over seven months after the first travel advances were received and over four months after the last travel advances were received. The trial court allowed appellants to testify as to the existence of these agreements, but refused to allow introduction of the written agreements themselves. The trial court did not abuse its discretion in concluding that the probative value of these agreements, as they tended to prove that appellants did not knowingly convert Telephone Authority funds, was substantially out-

weighed by the dangers of confusing the issues and misleading the jury. *Id.* 403.

Because appellants were deprived of their full constitutional right to a jury trial, their convictions are reversed, and the trial court is instructed to conduct all future proceedings against appellants consistently with this opinion.