875 F.2d 861
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul BOCK, Petitioner-Appellant,
v.
Ben G. BOWER, Superintendant of the Hocking Correctional
Facility, Respondent-Appellee.
 No. 88-3847.
 United States Court of Appeals, Sixth Circuit.
 May 4, 1989.
 
 Before KEITH and KENNEDY, Circuit Judges, and RICHARD B. McQUADE, Jr., District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner-appellant, Paul Bock, appeals from the judgment of the District Court denying his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254 (1982). Petitioner claims that the state trial court violated his right to due process by refusing to hold a competency hearing and by instructing the jury to presume an essential element of the charged crime of rape and gross sexual imposition. We find no denial of due process by the courts below and therefore affirm the District Court's denial of the writ.
 
 
 2
 Petitioner was indicted by a grand jury on one count of rape and one count of gross sexual imposition in violation of Ohio law. See Ohio Rev.Code Ann. Secs. 2907.02 & 2907.05 (Page 1987). Petitioner plead not guilty. He later filed an amended plea of not guilty by reason of insanity and a request for a competency hearing. A court-ordered psychological evaluation of petitioner was conducted and the findings reported to the trial judge. A competency hearing, however, was never held.
 
 
 3
 The case proceeded to trial. Following opening statements, petitioner withdrew his plea of not guilty by reason of insanity. One element of the charged crimes is that the victim must not be "the spouse of the offender." Id. In its instructions to the jury, the trial court told the jury that "in this case it's not appropriate" to consider the issue of whether the victim was the spouse of petitioner. The trial court then charged the jury that it must find all the elements of the crimes for which petitioner was indicted beyond a reasonable doubt including the fact that the victim was not the petitioner's spouse. Defense counsel's objection to the judge's charge regarding the "spouse" element was overruled. The jury returned a guilty verdict. Petitioner was sentenced to one indefinite term of five to twenty-five years imprisonment and one definite term of two years imprisonment, both sentences to be served concurrently.
 
 
 4
 Petitioner appealed to the Ohio Court of Appeals arguing among other things that the trial court's failure to hold a competency hearing and its instructions telling the jury to disregard the "spouse" issue violated due process. The Ohio Appellate Court granted relief on the competency hearing issue but denied relief regarding the erroneous jury instructions and remanded. The State of Ohio appealed and petitioner cross-appealed to the Supreme Court of Ohio. The Ohio Supreme Court reversed the appellate court on the competency hearing claim and affirmed the lower court's decision concerning the allegedly improper jury instruction claim. See State v. Bock, 28 Ohio St.3d 108 (1986).
 
 
 5
 Petitioner contends that his history of hospitalization, as revealed in the psychologist's report, his alcohol and drug overdose shortly before trial, and his defense counsel's initial suggestion that a competency hearing be held should have alerted the trial court that he may not have been competent to stand trial. Petitioner argues that under the circumstances, the trial court was constitutionally required to hold an evidentiary hearing on petitioner's mental capacity. We disagree.
 
 
 6
 Due process mandates a competency hearing be held if the trial court has substantial doubt concerning a defendant's capacity to stand trial. Pate v. Robinson, 383 U.S. 375 (1966). The trial judge may consider a number of factors when deciding whether an evidentiary hearing on a defendant's mental capacity is constitutionally required. The Supreme Court has stated that "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion" are all relevant to the judge's decision whether to hold an evidentiary hearing. Drope v. Missouri, 420 U.S. 162, 180 (1975). Although in some circumstances one of these factors may alone be sufficient to require a hearing, none of them should be viewed in isolation. Id.; Williams v. Bordenkircher, 696 F.2d 464, 466 n. 1 (6th Cir.), cert. denied, 461 U.S. 916 (1983). The ultimate question to be resolved is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as [ ] factual understanding of the proceedings against him.' " Williams, 696 F.2d at 466 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).
 
 
 7
 The trial court is not constitutionally required to hold an evidentiary hearing in every case; only if facts come to light casting sufficient doubt on a defendant's capacity to stand trial must the trial judge order a hearing. When reviewing a trial court's failure to hold an evidentiary hearing we must determine " '[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.' " Williams, 696 F.2d at 467 (quoting Pate v. Smith, 637 F.2d 1068, 1072 (6th Cir.1981)). Only if a reasonable doubt arises regarding the defendant's competency must the trial judge hold a hearing. Pate, 637 F.2d at 1072.
 
 
 8
 We agree with the District Court that the state trial judge was presented with insufficient evidence to require him to hold an evidentiary competency hearing.[1] The psychological report would not have raised a substantial doubt as to petitioner's competence to stand trial. Although the report reviewed petitioner's problems with drugs and alcohol abuse in stressful situations, the report concluded that petitioner was well oriented regarding "time, place, person and situation." The psychologist observed that petitioner's concentration and attention were intact, as were his short and long term memory. During the examination, the psychologist noticed no evidence of "bizarre behavior, bizarre thoughts, hallucinations, delusions, looseness of associations, or other signs of a major mental disorder" and concluded that "[t]here was no objective evidence that at the time of the clinical interview [petitioner] was a mentally ill person." After discussing petitioner's "significant psychiatric difficulties," the psychologist concluded that "these difficulties were not of sufficient severity at the time of the alleged offense to cause his reasoning to be impaired." Indeed, the doctor concluded that petitioner "understands the nature and objective of the proceedings against him, and is capable of cooperating with an attorney in his own defense." Absent some type of additional indicia of insanity on petitioner's part, the psychological report was insufficient to raise a substantial doubt as to petitioner's competency.
 
 
 9
 Other factors also counsel against the necessity of an evidentiary hearing. The record reveals no additional evidence of any behavior by petitioner indicative of incompetency. No witness, lay or expert, testified that petitioner was incompetent. Petitioner's performance as a witness in the courtroom on direct and cross-examinations was not impaired in any way. Nor did defense counsel pursue the incompetency question further after his pretrial request for a hearing. We find, on the facts of this case, insufficient indicia of incompetency to require the trial judge to hold an evidentiary hearing.
 
 
 10
 Petitioner next argues that the trial judge, by instructing the jury to disregard an essential element of the crimes with which petitioner was charged, impermissibly relieved the prosecution of its burden to prove every element of the charged crimes beyond a reasonable doubt. See, e.g., In re Winship, 397 U.S. 358, 363-64 (1970). Under Ohio law, an element of both rape and gross sexual imposition is that the victim not be "the spouse of the offender." See Ohio Rev.Code Ann. Secs. 2907.02, .05. The trial judge instructed the jury as follows:
 
 
 11
 The Defendant, Paul Bock, is charged with rape. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the fourth day of February, 1985 [sic], in Hamilton County, Ohio, the Defendant engaged in sexual conduct with another who was not the spouse of the Defendant. You realize that "spouse" was put in in circumstances where "spouse" is not appropriate. Why, disregard it.
 
 
 12
 That the other person was less than 13 years of age, whether or not the Defendant knew the age of that person.
 
 
 13
 Fellatio means a sexual act committed with the male sexual organ and the mouth, in regard to the rape count. You realize spouse means a person married to the offender at the time of the alleged offense and as I stated, in this case it's not appropriate.
 
 
 14
 In regard to sexual imposition, the Defendant is charged with gross sexual imposition. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the fourth day of February, 1984, and in Hamilton County, Ohio, the Defendant had sexual contact with another, not the spouse of the Defendant.
 
 
 15
 (Emphasis added.)
 
 
 16
 Both the state appellate and supreme court found this instruction to be harmless error. Specifically, the Ohio Supreme Court concluded that "[i]t was a legal impossibility for [petitioner] and the victim to be married" because petitioner was already legally married and the victim, a twelve-year-old male, could not have legally married an adult male. Bock, 28 Ohio St.3d at 111. See Ohio Rev.Code Ann. Sec. 3101.01 (allowing "[m]ale persons of the age of eighteen years ... not having a husband or wife living" to contract matrimony).
 
 
 17
 The District Court found that the trial court's instruction did not, in fact, remove the issue from the jury's consideration. In reaching its verdict of guilty, the jury necessarily found that the victim was less than 13 years of age and that he was a male. Although the jury was not expressly instructed to consider the essential element of whether or not the victim was petitioner's spouse, the jury did decide the underlying factual predicates. Thus, observed the District Court, the "determination of this essential element was, as a practical matter, not removed from the jury's consideration." In the alternative, the District Court concluded that any error which occurred was harmless.
 
 
 18
 The trial judge instructs the jury on the law and in some instances may comment upon the evidence. United States v. Mentz, 840 F.2d 315, 319 (6th Cir.1988). The judge transcends his proper role and invades the province of the jury " 'when he instructs the jury as a matter of law that a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding.' " Id. at 320 (quoting United States v. White Horse, 807 F.2d 1426, 1429 (8th Cir.1986)). In such a case, the judge has in effect rendered a directed verdict for the prosecution in violation of due process. See Rose v. Clark, 478 U.S. 570, 575 n. 3 (1986); Sandstrom v. Montana, 442 U.S. 510 (1979).
 
 
 19
 We believe the trial judge did invade the province of the jury when he instructed them that it was "not appropriate" for them to consider whether the victim could be the spouse of the petitioner. The judge's comments conveyed a message that the jury need not consider the issue at all in their deliberations. Thus, his instructions impermissibly relieved the state of its burden of proving every element of the crimes charged beyond a reasonable doubt.[2] See Mentz, 840 F.2d at 320. The judge's error in this case is analogous to the error that occurred in Sandstrom, 442 U.S. at 510; he in effect instructed the jurors to presume an element of the crime.
 
 
 20
 The issue presented, then, is whether a Sandstrom -type error can be harmless in a case in which the impermissibly presumed element of the crime is uncontested at trial and the predicate facts as necessarily found by the jury conclusively establish the existence of the presumed element as a matter of law. The Supreme Court has held that even errors of Constitutional magnitude can be subject to harmless error analysis. See Chapman v. California, 386 U.S. 18 (1967). The Court has applied the harmless-error rule to a number of constitutional violations such as failure to permit cross-examination concerning witness bias, denial of the right to be present at trial, and admission of evidence obtained in violation of the fourth amendment. See Clark, 478 U.S. at 576-77 (listing cases). See also Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (harmless-error doctrine "recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence ... and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error" (citations omitted)). The Chapman Court, however, recognized that some constitutional errors are of such a fundamental nature that they "require reversal without regard to the evidence in the particular case." Clark, 478 U.S. at 577 (listing cases). If however, the defendant was represented by counsel and had an impartial adjudication, a "strong presumption" attaches that any other errors are subject to harmless-error analysis. Id. at 579. Constitutional errors falling outside Chapman 's harmless-error formulation "are the exception and not the rule." Id. at 578.
 
 
 21
 The Sixth Circuit has recently decided a case in which the court refused to apply harmless-error analysis to jury instructions which entirely precluded the jury from considering an essential element of the crime charged. In United States v. Mentz, 840 F.2d 315 (6th Cir.1988), a prosecution for bank robbery under 18 U.S.C. Sec. 2113(a), the government had to prove as one element of its case that the deposits of the bank robbed were insured at the time of the robbery by the Federal Deposit Insurance Corporation (FDIC). At the close of the evidence, Mentz moved for a dismissal of the charges arguing that the government had failed to prove that the banks were FDIC insured. The trial court denied the motion. The trial court instructed the jury in no uncertain terms that the banks in question were FDIC insured.
 
 
 22
 On appeal the Sixth Circuit held the FDIC charge to be a Constitutional violation. The Mentz Court stated it could not deem the error harmless. The instruction had rendered the trial fundamentally unfair because the judge had entirely precluded the jury from considering a contested issue. Id. at 324. The Court in Mentz distinguished the Supreme Court's decision in Rose v. Clark, supra, as involving a situation where the judge's instruction simply shifted the burden of proof to the defendant in the form of a rebuttable presumption rather than conclusively established an essential element of the crime charged as the trial judge did in Mentz. Mentz, 840 F.2d at 324 & n. 18.
 
 
 23
 We do not believe the Mentz decision stands for the proposition that harmless-error analysis never applies to the constitutional violation of removing from the consideration of the jury an essential element of an offense. The Mentz Court, in discussing the Supreme Court's decision in Clark, noted the distinction between a jury charge that instructs the jury to presume certain conclusions from predicate facts and one that entirely precludes the jury from considering a material issue. Id. at 324. The decision in Mentz rests upon the court's belief that the instruction at issue there differed from the one at issue in Clark because it "directed a partial verdict for the prosecution" and could not, therefore, be considered harmless.[3] The law of this Circuit recognizes that in some circumstances the removal of an essential element of an offense from the consideration of the jury is a constitutional defect subject to harmless-error doctrine.
 
 
 24
 We believe the instant case is similar to the error presented in Clark and distinguishable from the error in Mentz. First, unlike Mentz, where the defense actively contested the element removed from the jury's consideration, the issue of whether the victim could be the spouse of petitioner was never contested. Second, unlike the Mentz trial where the district court failed to instruct the jury that the government was required to prove beyond a reasonable doubt that the banks were FDIC insured, here the state trial court actually instructed and informed the jury of the prosecution's burden to prove beyond a reasonable doubt that the victim was not the spouse of the petitioner. Third, although the judge's comments to petitioner's jury were improper, the judge did not tell the jury point-blank that the victim was not the spouse of the petitioner.
 
 
 25
 The predicate facts in this case, as found by the jury, conclusively establish that the victim could not be the spouse of the petitioner. The jury was instructed that conviction on the two charges against petitioner required a finding that the victim "was less than 13 years of age" and that the victim was the "Joseph Gamble" named in the indictment. Although the trial court impermissibly told the jury that the definition of spouse was "not appropriate" on the facts of the case, the jury did, in fact, decide the factual predicates underlying that conclusion. Based upon the fact that the victim was a twelve-year-old boy he was, as a matter of law, not "the spouse of the offender." See Bock, 28 Ohio St.3d at 111 (twelve-year-old male legally unable to marry petitioner under Ohio law). In this event "the erroneous instruction is simply superfluous: the jury has found, in Winship 's words, 'every fact necessary' to establish every element of the offense beyond a reasonable doubt." Clark, 478 U.S. at 581; cf. Davis v. State of Tennessee, 856 F.2d 35, 36 (6th Cir.1988) (Sandstrom error superfluous and harmless where petitioner convicted of murder under the felony murder rule).
 
 
 26
 We agree with the District Court that "if any case justifies application of the harmless error doctrine to the constitutional error presented herein, this would appear to be that case." The erroneous instruction, while constitutionally infirm, neither affected the jury's deliberations, undermined the role of the jury, nor impaired the trial's truth-seeking function. Thus, we find the error to be harmless.
 
 
 27
 Accordingly, we AFFIRM the judgment of the District Court denying the writ.
 
 
 
 *
 The Honorable RICHARD B. McQUADE, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The District Court found petitioner procedurally barred from raising his claim to a competency hearing because petitioner failed to present his factual basis (the psychological report) to the Ohio Supreme Court. See Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir.1987). See also Murray v. Carrier, 477 U.S. 478 (1986). But see Brief for Petitioner at 13 n. 2 (arguing Ohio Supreme Court was fairly presented with the facts upon which petitioner made his competency hearing claim because the psychological report was made a part of the record on appeal at the instance of the prosecution). We do not address the District Court's procedural default analysis because we find that no competency hearing was constitutionally required
 
 
 [2]
 The judge's remarks here could be seen as comments upon the evidence depending upon the trial judge's punctuation of the remarks at trial; this is especially so given the fact that no rational juror could believe that petitioner, an adult male, and the victim, a twelve-year-old adolescent, could possibly have been married. Furthermore, the marriage issue understandably was uncontested at trial and remains so. We will assume, however, that the trial judge impermissibly instructed the jury to presume the existence of an element of the offenses with which petitioner was charged. Cf. Schwachter v. United States, 237 F.2d 640, 644 (6th Cir.1956) (judge in criminal trial cannot take a question of material fact from the jury "no matter how strongly he may be of the opinion that the evidence has established the fact beyond a reasonable doubt")
 
 
 [3]
 Prior Sixth Circuit caselaw has stopped short of holding that all errors which remove or omit an issue from the jury's consideration will always require reversal. See Hoover v. Garfield Heights Mun. Court, 802 F.2d 168, 175-76 & n. 10 (6th Cir.1986), cert. denied, 480 U.S. 949 (1987); Glenn v. Dallman, 686 F.2d 418, 421 n. 2 (6th Cir.1982); United States v. Bryant, 461 F.2d 912, 921 (6th Cir.1972)