**UNITED STATES of America,** Plaintiff-Appellee,

v.

**Lewis Jay Breckenridge LOGAN,** Defendant-Appellant.

No. 79–1511.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 17, 1980.

Decided Feb. 25, 1981.

Bruce G. Smith of Bosworth & Slivka, P.C., Denver, Colo., for defendant-appellant.

James E. Edmondson, Asst. U. S. Atty., Muskogee, Okl. (Julian K. Fite, U. S. Atty., Muskogee, Okl., on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and BARRETT and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Lewis Logan was convicted after a jury trial on eleven counts of embezzlement and theft from an Indian tribal organization, in violation of 18 U.S.C. § 1163.[1] On appeal, Logan contends that the funds in question were not moneys taken from an Indian tribal organization within the meaning of section 1163. He also alleges as reversible error several admissions into evidence. We find his contentions to be without merit and affirm the conviction.

Logan served as secretary-treasurer of Choctaw Agri-Enterprises, Inc. (CAEI or corporation), a private corporation formed for profit under the laws of Oklahoma. The corporation was organized through the efforts of the Bureau of Indian Affairs (BIA) and the Choctaw Tribe, a tribal enti-

---

1. This statute provides in pertinent part:

   "Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization . . .

   " . . . .

   "Shall be fined not more than $5,000, or imprisoned not more than five years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000, or imprisoned not more than one year, or both.

   "As used in this section, the term 'Indian tribal organization' means any tribe, band, or community of Indians which is subject to the laws of the United States relating to Indian affairs or any corporation, association, or group which is organized under any of such laws."

ty eligible to participate in programs under the Indian Financing Act of 1974, 25 U.S.C. § 1451 et seq. The corporation was funded with $85,000 in tribal money and a $50,000 grant under the Act. As required by the Articles of Incorporation, the corporate stock was wholly owned by the Choctaw Tribe through its principal chief. The chief designated members of the board of directors, one of whom was Logan.

Pursuant to the grant agreement between CAEI and the BIA, a periodic accounting was to be made by CAEI. The chairman of CAEI repeatedly requested Logan, as secretary-treasurer, to prepare the reports. When Logan failed to do so, the chairman asked the BIA to audit the financial situation of CAEI. This audit revealed $17,964.88 in funds unaccounted for, which the auditor believed were improperly taken from CAEI. The principal chief removed Logan as secretary-treasurer and the United States brought criminal charges.

## I.

■ Logan contends that CAEI is not an Indian tribal organization within the meaning of section 1163. That statute defines an Indian tribal organization as "any tribe, band, or community of Indians which is subject to the laws of the United States relating to Indian affairs or any corporation, association, or group which is organized under any of such laws." 18 U.S.C. § 1163. Because CAEI is incorporated under Oklahoma law, Logan argues that CAEI is an entity separate from the Choctaw Tribe and that its funds are not the funds of the tribe itself. We hold this argument to be without merit.

Although CAEI was formed under the corporate laws of Oklahoma, it was established through the mutual effort of the BIA and the Choctaw Tribe to receive benefits under Title IV of the Indian Financing Act of 1974, 25 U.S.C. §§ 1521–1524. Title IV provides grants to Indian Tribes for the purpose of establishing or expanding "profit-making Indian-owned economic enterprises" . . . . Id. § 1521. The Act defines "economic enterprise" as "any Indian-owned . . . commercial, industrial, or business activity established or organized for the purpose of profit: Provided, That such Indian ownership shall constitute not less than 51 per centum of the enterprise." Id. § 1452(e). As we have noted, CAEI was funded by tribal money and a government grant. Pursuant to the grant, the BIA and CAEI entered into an Indian Business Development Program Grant Agreement, which stated the purpose of the CAEI business project to be provision of economic benefits to the Choctaw Nation of Oklahoma. In consideration for receiving the grant, CAEI agreed to eight conditions which controlled the operation of the corporation.

In our view, as an entity established under the guidelines of the Indian Financing Act and recognized by the BIA as conforming to that Act, CAEI is a corporation organized under the laws of the United States relating to Indian affairs within the meaning of section 1163. This is true even though the corporation is also chartered under Oklahoma statutes. We do not believe that Oklahoma law and the Indian Financing Act are mutually exclusive; a corporation may be organized under both, as was done here.

Given these undisputed facts, the trial court was correct in finding as a matter of law that the funds of the corporation were funds of an Indian tribal organization under 18 U.S.C. § 1163.[2]

2. Our holding here implements the Congressional purpose underlying section 1163.

"The principal objective of the proposed bill is to protect Indian tribal organizations, especially those created pursuant to the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), from the actions of dishonest or corrupt tribal officials. It provides for the punishment of persons holding positions of trust in tribal organizations who abuse their responsibilities by diverting tribal fund to their own pockets or those of their friends. It also provides for the punishment of other forms of theft of embezzlement from Indian tribal organizations. . . .

" . . .

"During the years since the first group was organized under the Indian Reorganization

## II.

■ The Government presented testimony by Thomas Wilson, the BIA accountant who audited the books of CAEI. The trial court found Wilson qualified as an expert in accounting and allowed him to give his opinion that the funds at issue were improperly taken from CAEI. Two audit reports prepared by Wilson were admitted into evidence under both Fed.R.Evid. 803(6), as a business record of the BIA, and Fed.R.Evid. 803(8), as a report of a public agency.

Logan argues that the opinion expressed by Wilson was inadmissible because it usurped the province of the court. Logan concedes, as he must, that under Fed.R.Evid. 704 an expert may express his opinion on an ultimate issue of fact, but he contends that Wilson went beyond the limits of Rule 704 and rendered an opinion on legal principles. We disagree. Whether the funds were taken improperly is a question of fact. *See United States v. Miller*, 600 F.2d 498, 499–500 (5th Cir. 1979). An expert in accounting may properly express his opinion on this issue, *id.*, and Wilson was thoroughly cross-examined as to the basis for his opinion. Wilson did not testify as to what legal standards were applicable to this determination. We find nothing objectionable in his testimony.

■ Logan also objects to portions of one report which refer to allegedly improper conduct by the defendant other than the acts for which he was charged. The trial court properly rejected this argument, finding the evidence to be admissible under Fed.R.Evid. 404(b) as showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ Finally Logan argues that the admission of a cover letter attached to one of the reports was prejudicial error. Defense counsel did not object to admission of the letter at the time he made other objections to the report, even though both the prosecutor and the court referred to it out of the presence of the jury.

"Absent 'plain error' under Fed.R.Crim.P. Rule 52(b), 18 U.S.C.A., which we have described as 'serious prejudicial error' affecting life or liberty requiring corrective action by the appellate court even though not called to the attention of the trial court, we will not consider matters presented for the first time on appeal."

*United States v. Guerrero*, 517 F.2d 528, 531 (10th Cir. 1975) (citations omitted). In determining whether clear error is present, the entire record must be reviewed. *Tapia v. Rodriguez*, 446 F.2d 410, 413 (10th Cir. 1971). "[T]he most significant factor to be considered is the strength of the case against the defendant." *United States v. Stevens*, 452 F.2d 633, 635 (10th Cir. 1972).

Act, situations have been encountered from time to time that involved the misuse or misappropriation of tribal funds, the lack of adequate accounting records, or other improper actions by tribal officials. Occasionally, the same official has been guilty of repeated breaches of trust. Yet in most instances the creation of fiduciary positions has not been paralleled by corresponding safeguards in the law and order codes under which the tribes operate. Even in those instances where criminal sanctions are provided in the tribal codes, the tribal members have been extremely reluctant to bring actions in the tribal courts against apparently faithless tribal officials. The only practical recourse available to tribal members, therefore, has been to vote the malefactors out of office in the tribal elections.

"Under authority of the Indian Reorganization Act, many Indian groups are qualified to obtain control of substantial sums of money derived from oil and gas leases, timber sales, and the like; to hold these funds in the tribal treasuries; and to expend them subject only to the limitations contained in the tribal constitutions and charters. In addition, under annual appropriation acts of the Department of the Interior and various special acts of Congress, tribal funds in the Treasury of the United States may be advanced to Indian tribes for such purposes as may be designated by the governing body of the particular tribe involved and approved by the Secretary of the Interior. In these circumstances, it is important that adequate penal safeguards be established to protect the tribal members from actions of dishonest or corrupt tribal officials and other types of peculation. This the proposed bill would do."

S.Rep.No.2723, 84th Cong., 2d Sess., *reprinted in* [1956] U.S.Code Cong. & Ad.News 3841, 3841–42.

Here the evidence against Logan was substantial. Furthermore, the cover letter was never relied upon by the Government or called to the attention of the jury. Although the letter indicates that the author believed some criminal activity had occurred, the letter does not mention the defendant or impute the criminal conduct to him in any way. We find no serious prejudicial error requiring reversal.

The conviction is affirmed.