UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Edward BRAME,
Defendant-Appellant.

No. 80–1480.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1981.

Decided Oct. 1, 1981.

Susan G. Wintermute, Snell & Wilmer, Phoenix, Ariz., for defendant-appellant.

Truman Young, Jr., Asst. U. S. Atty., Phoenix, Ariz., argued, for plaintiff-appellee; Robert P. Weidner, Asst. U. S. Atty., Phoenix, Ariz., on brief.

Before ANDERSON and POOLE, Circuit Judges, and TAKASUGI *, District Judge.

TAKASUGI, District Judge:

## I. BACKGROUND

Appellant Richard Edward Brame was indicted on December 12, 1979 for embezzling funds from an Indian tribal organization in violation of 18 U.S.C. § 1163.[1] The indictment alleged that appellant embezzled approximately $7,816.47 while he was executive director of the Hopi Tribal Housing Authority ("HTHA").

Appellant was convicted in a trial by jury and thereafter sentenced.

Appellant moved the trial court for acquittal under Rule 29, Federal Rules of Criminal Procedure, claiming that the government failed to prove that the funds embezzled were from an "Indian tribal organization," as required by 18 U.S.C. § 1163. Appellant's motion was denied.

Appellant filed this appeal in *forma pauperis.*

## II. ISSUE PRESENTED

Did the district court err in ruling that the embezzled funds belonged to an "Indian tribal organization"?

## III. DISCUSSION

Appellant was convicted under 18 U.S.C. § 1163, which provides that:

Whoever embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization ... Shall be fined not more than $5,000, or imprisoned not more than five years, or both ....

The section further provides that "the term 'Indian tribal organization' means any tribe, band, or community of Indians which is subject to the laws of the United States relating to Indian affairs or any corporation, association, or group which is organized under any such laws."

Appellant contends that the HTHA, of which he was executive director when the alleged embezzlement occurred, does not constitute an "Indian tribal organization" as defined and required by the provisions of 18 U.S.C. § 1163, quoted above. Instead, he argues that the HTHA is a corporate entity substantially independent from the Hopi tribe and from the control of the Tribal Council.

The government responds that appellant does not distinguish or discuss applicable case law which indicates that a Tribal Housing Authority is to be considered a "tribal organization" for the purpose of 18 U.S.C. § 1163. In *United States v. Eldred*, 588 F.2d 746 (9th Cir. 1978), this court upheld the conviction of a defendant charged, in part, with a violation of 18 U.S.C. § 1163. The defendant there had misapplied funds belonging to the Navajo Housing Authority. In a footnote, the court stated:

The Navajo Housing Authority is a Native American *tribal organization* engaged, among other things, in the construction of low-rent housing on the Navajo Indian Reservation. Funds for the NHA come from the Department of Housing and Urban Development pursuant to agreements that require the funds to be invested ...

588 F.2d at 749, n. 1. (Emphasis added.)

The government asserts that the indication in *Eldred* that the Housing Authority is a tribal organization is supported by *United States v. Foote*, 635 F.2d 671 (8th Cir. 1980). In *Foote* the director of the Little Hoop Community College was charged with misapplication of funds of the

---

* The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

1. See text of 18 U.S.C. § 1163 under III, *infra.*

Devils Lake Sioux Tribe. The community college was found to be a "tribal organization created by Devils Lake Sioux Indian Tribe." 635 F.2d at 672.

The government proceeds to argue that the HTHA was created by the Tribal Council for the purpose of meeting the housing needs of the tribe. The HTHA must submit annual reports to the Council and the Council is responsible for appointing and reappointing the HTHA's Board of Commissioners. The government argues that this is clear evidence supporting its contention that the HTHA is, in reality, a "tribal organization."

Initially, it should be noted that there appears to be no controlling precedent in the instant case. Case law cited by the government does not focus on the issue presented in this appeal. In *Eldred*, the appellant contended that multiple errors by the trial judge in exercise of discretion and in administration of jury instructions had denied him a fair trial. There is no indication that defendant argued against the applicability of 18 U.S.C. § 1163 or that the Court of Appeals was asked to address this issue on appeal.

With respect to *Foote*, besides the obvious factual distinctions from the instant case, there is a statutory distinction. The definition of "tribal organization" under § 1163 includes a corporation, association or group organized under the "laws relating to Indian affairs." Laws relating to Indian affairs are found in Title 25 of the U.S. Code. The chartering and administration of community colleges by a tribe is specifically provided for at 25 U.S.C. § 1801 *et seq.* [2] Unlike community college provisions, there is no comparable statutory provision under Title 25 which makes explicit reference to Tribal Housing Authorities.

The above observations notwithstanding, it appears that an Indian Housing Authority should be considered a "tribal organization" for the purposes of § 1163. An examination of the regulations promulgated with respect to Indian Housing Authorities reveals that the tribe, through its Tribal Council, plays a vital role in the establishment and continuity of the Housing Authority.

The HTHA was established by the Hopi Tribal Council pursuant to § 805.108 of the Federal Register which provides that an Indian Housing Authority may be established:

By a tribal ordinance, enacted by exercise of a tribe's powers of self-government independent of state law, creating an IHA with all necessary legal powers to carry out low income housing projects for Indians, which IHA shall be established in accordance with 805.109.[3]

Part (b) of § 805.109 states that "Where an Indian tribe has governmental police power to promote the general welfare, including the power to create a housing authority, an IHA may be established by tribal ordinance enacted by the governing body of the tribe." [4]

There appears to be no dispute that the ordinance creating the HTHA complies with and is patterned after the Department of Housing & Urban Development (HUD) regulations. These regulations [5] apparently provide a standard form for the establishment and administration of Indian Housing Authorities. In addition to establishing the Housing Authority to serve the tribe's needs, the enabling ordinance specifies in detail the powers, purposes and obligations of the Housing Authority. The ordinance requires that the Housing Authority be managed by a Board of Commissioners com-

---

2. 25 U.S.C. §§ 1801 *et seq.* provides for tribally controlled community college assistance, the purpose of which is "to provide grants for the operation and improvement of tribally controlled community colleges to insure continued and expanded educational opportunities for Indian students." 25 U.S.C. § 1802.

3. Vol. 44, No. 216 Fed.Reg. p. 64215 (Nov. 6, 1979); 24 C.F.R. § 805.108(a).

4. Vol. 44, No. 216 Fed.Reg. p. 64215 (Nov. 6, 1979); 24 C.F.R. § 805.109(b).

5. See Appendix I, Fed.Reg. at 6421.

posed of five persons.[6]  Such Commissioners are appointed by the Tribal Council and can, under circumstances showing neglect of duty or misconduct, be removed by the council.[7]

The ordinance regulations further require that the Housing Authority submit annual reports "to the Council showing (a) a summary of the year's activities, (b) the financial condition of the Authority, (c) the condition of the properties, (d) the number of units and vacancies, (e) any significant problems and accomplishments, (f) plans for the future, and (g) such other information as the Authority or the Council shall deem pertinent".[8]

In essence, therefore, it appears that the tribe, through its Council, participates in and exercises at least indirect control of the Housing Authority and its activities.  Further evidence for this position is found in those regulations providing for the cooperation of the Housing Authority with other Tribal government resources and bodies, i. e., Tribal Courts.[9]  These and other provisions recognize the interdependence of the Housing Authority and other "arms" of the Tribal government.  In fact, these regulations [10] go so far as to state, that "The IHA may be made a department or division of the tribal government".  Therefore, notwithstanding the corporate entity status and financial independence seemingly given it, the Hopi Tribal Housing Authority should be viewed as a "tribal organization" for the purposes of 18 U.S.C. § 1163.

Viewing an Indian Housing Authority as a "tribal organization" within 18 U.S.C. § 1163 would obviously protect such organizations and those they are assisting from the type of conduct engaged in by appellant.  More importantly, the legislative history reveals that such a perspective would be consistent with the purposes for which the statute was enacted.  As the then Assistant Secretary of Interior, Fred Aandahl, stated in a letter to the President:

The principal objective of the proposed bill is to protect Indian tribal organizations, especially those created pursuant to the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), from the actions of dishonest or corrupt tribal officials.  It provides for the punishment of persons *holding positions of trust in tribal organizations who abuse their responsibilities* by diverting tribal funds to their own pockets or those of their friends.  It also provides for the punishment of other forms of theft or embezzlement from Indian tribal organizations (emphasis added).[11]

Contrary to appellant's assertion, it could be argued that appellant, as executive director of the HTHA, was a tribal official for § 1163 purposes.  Regardless of such an argument, however, it would appear that appellant's contention that 18 U.S.C. § 1163 only applies to tribal officials would require a rigid reading of the legislative history and ignore the scope of coverage apparently intended.  No reasons are advanced to explain why such a restricted reading of the statute should be required.

## IV.  CONCLUSION

For the foregoing reasons, the district court was correct in finding that the Hopi Tribal Housing Authority was a "tribal organization" as required by 18 U.S.C. § 1163.  Affirmed.

---

**6.**  Appendix I, Art. IV, Fed.Reg. at 64215.

**7.**  Appendix I, Art. IV, (c), Fed.Reg. at 64215.

**8.**  Appendix I, Art. VII; Fed.Reg. at 64218.

**9.**  See Appendix I, Art. VIII;  Fed.Reg. at 64218.

**10.**  Appendix I, Fed.Reg. at 64219.

**11.**  U.S.Cong. & Admin.News, 1956, p. 3841.