# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1781

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of North Dakota. |
| Ronald S. Morin, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: February 13, 2004
Filed: February 28, 2005

_____

Before BYE, HEANEY, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Ronald S. Morin appeals his convictions for conspiracy to violate 18 U.S.C. §§ 666 (theft from programs receiving federal funds) and 1163 (embezzlement and theft from an Indian tribal organization & aiding and abetting) and for substantive violations of §§ 666 and 1163. We affirm Morin's convictions but remand for resentencing in light of United States v. Booker, – U.S. –, 125 S.Ct. 738, – L.Ed.2d – (2005).

I

Morin is an enrolled member of the Turtle Mountain Band of Chippewa Indians (the Tribe). From 1997through1998, Morin served on the board of directors for Uniband, a corporation the Tribe established for the purpose of promoting economic development on the reservation. Uniband receives funding from the Tribe (including a $2,100,000 capital contribution in 1997) and tenders net margins in the form of distributions or returns on the Tribe's investment in this economic development unit. In 1998, Morin resigned from Uniband's board and became a "contract administrator/tribal liaison" for Uniband. Approximately three months later, Morin resigned and was appointed Director of Tribal Services, Inc., a newly formed tribal corporation.

Co-defendant Raphael Decoteau is also an enrolled member of the Tribe. Decoteau served as a member of the Tribal Council from 1986 through1990 and from 1992 until his removal in 1996. In late 1996, Decoteau was again elected to the Tribal Council and later served as Tribal Chairman in 1998.

This saga begins with an old bus garage on the Turtle Mountain reservation owned by the federal government, which considered the garage as being surplus property and, following a request from the Tribe in 1996, transferred ownership to it. In 1998, after Decoteau became Tribal Chairman, the Tribe gave the garage to the Dunseith and Belcourt Black Belt Academies (the Academies), a business owned by Morin. The Academies thereafter entered into a lease with Uniband to use the garage for storing documents at a monthly rate of $5000.[1] Once the lease was in place, Morin, at the direction of Decoteau, opened a checking account in the name of the Academies and deposited the lease payments into the account. Both Morin and

---

[1]Testimony at trial indicated the only documents Uniband ever stored in the garage were blank social security forms.

Decoteau were signatories on the account and together issued checks in excess of $90,000. Several checks totaling $29,728.13 were issued to cash, while additional checks totaling $7800 were made payable to Decoteau's relatives. On one occasion, Morin paid himself $7000 from the account and used the funds to purchase a truck to haul gravel for the Tribe at a rate of $55 per load, payable to Morin.

Morin and Decoteau also arranged for Uniband to pay for much-needed repairs to the garage. Over a two-week period, five tribal carpenters worked to repair the garage using materials costing approximately $1600 and paid for by Uniband.

After six months, Morin wrote to Uniband on behalf of the Academies indicating the lease payments would be increased to $10,000 in order to provide additional security for Uniband's stored documents. Decoteau, acting as Tribal Chairman, instructed Uniband's Director to increase the rent payments to $10,000 per month. In November 1998, Decoteau was defeated in his bid for re-election as Tribal Chairman. The incoming Chairman reviewed the lease, determined it was unconscionable, and ordered it cancelled. During the course of the lease, Uniband paid nearly $100,000 to the Academies.

Following an investigation into these transactions, Morin and Decoteau were charged in a five-count indictment. Count One alleged conspiracy to violate §§ 666 and 1163. Count Two alleged a substantive violation of § 1163 premised on the transfer of the garage from the Tribe to the Academies. Count Three alleged Decoteau and Morin, while members of Indian tribal organizations (ITOs) (the Tribal Council and Uniband respectively), violated § 1163 by wrongfully obtaining lease payments from the Tribe. Count Four alleged Decoteau and Morin, while members of ITOs, violated § 1163 by wrongfully obtaining repairs to the garage from the Tribe. Count Five alleged a violation of § 666 premised on fraudulently obtaining funds from an organization receiving in excess of $10,000 annually in federal assistance, i.e., the Tribe or Uniband.

Morin was convicted on all five counts. The district court[2] denied Morin's motion for judgment of acquittal and sentenced him to twenty-one months incarceration. On appeal, Morin contends the district court improperly instructed the jury as to Counts Three and Four. Specifically, Morin contends the government had to prove Uniband was an ITO but the district court's instruction defining an ITO was erroneous. Morin also contends the evidence was insufficient to prove Uniband was an ITO and the district court improperly excluded evidence tending to prove the contrary proposition. Finally, Morin contends the improper instruction combined with comments by the district court indicating it believed Uniband was an ITO spilled over and prejudiced him as to Counts One, Two and Five.

II

Section 1163 was enacted to protect ITOs from the actions of dishonest or corrupt tribal officials who hold positions of trust in tribal organizations. See United States v. Zephier, 916 F.2d 1368, 1372 (8th Cir. 1990) (discussing the legislative history of § 1163). To prove a violation of § 1163, the government must show a tribal official in a position of trust with an ITO wrongfully obtained the money or property of the ITO. As used in § 1163, "Indian tribal organization" means any tribe, band, or community of Indians which is subject to the laws of the United States relating to Indian affairs or any corporation, association, or group which is organized under any of such laws.

At trial, the government argued Morin and Decoteau violated § 1163 by pursuing a scheme to wrongfully obtain lease payments and repairs to the garage from the Tribe through Uniband. Morin contends the government's theory required it to prove the Tribe and Uniband were in essence the same entity and to do so the

_____

[2]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

-4-

government had to prove Uniband was an ITO. We agree the government had to prove the Tribe and Uniband shared a financial identity, but we disagree the government had to prove Uniband was an ITO.

To prove a violation of § 1163, the government must show a tribal official in a position of trust with an ITO wrongfully obtained the money or property of the ITO. Here, the government argued Morin aided and abetted Decoteau's wrongful conduct committed while Decoteau served as a member of the Tribal Council. Accordingly, the government was only required to prove the Tribe is an ITO – a fact Morin concedes. Because the government did not seek to prove Morin violated § 1163 while occupying a position of trust with Uniband, its status as an ITO is irrelevant. Accordingly, we affirm Morin's convictions.

### III

Finally, Morin filed a supplemental brief challenging the district court's calculation of the amount of loss under United States Sentencing Guidelines § 2B1.1(b)(1)(E), and the application of a two-level enhancement for abusing a position of trust under U.S.S.G. § 3B1.3. At sentencing, Morin preserved an objection to the district court's loss calculation and to the two-level enhancement. Thus, in accordance with <u>Booker</u>, Morin is entitled to a new sentencing proceeding. <u>See</u> <u>United States v. Fox</u>, No. 03-3554, 2005 WL 195429 (8th Cir. Jan. 31, 2005) (remanding case involving <u>Booker</u> error where issue was preserved); <u>United States v. Coffey</u>, 395 F.3d 856, ___ (8th Cir. 2005) (same).

### IV

In conclusion, we affirm Morin's convictions but remand for resentencing in accordance with <u>Booker</u>.

_____